BERNICE B. DONALD,
dissenting.”
I write separately to express my disagreement with the outcome of this case. The harmful and everlasting effects of female genital mutilation have been universally recognized. Female genital mutilation “is ‘a horrifically brutal procedure, often performed without anesthesia[,]’ that causes both short-term and long-term physical and psychological consequences.” Mohammed v. Gonzales, 400 F.3d 785, 795 (9th Cir. 2005) (quoting Nwaokolo v. INS, 314 F.3d 303, 308 (7th Cir. 2002)). “The practice has been internationally recognized as a violation of the rights of women and girls.” Id. Because the decision here trivializes the devastating effects of this form of mutilation, I respectfully dissent.
Initially, I disagree with the rejection of Sene’s argument that female genital mutilation is a permanent and continuing act of persecution. The reasoning of the Ninth Circuit is persuasive, and should be instructive to our decision. In Mohammed, the Ninth Circuit found that “persecution in the form of female genital mutilation is similar to forced sterilization and, like that other persecutory technique, must be considered a continuing harm that renders a petitioner eligible for asylum, without more.” 400 F.3d at 799. The court went on to analogize female genital mutilation to sterilization saying: “[l]ike forced sterilization, genital mutilation permanently disfigures a woman, causes long term health problems, and deprives her of a normal and fulfilling sexual life.” Id. This continuing and permanent effect of female genital mutilation is clearly supported by the facts of this case, and many more like it, where the victim suffers from emotional and psychological trauma stemming from the mutilation well into her adulthood. Despite this Court’s initial questioning of “[t]he soundness of the decision in Mohammed,” Diallo v. Mukasey, 268 Fed.Appx. 373, 380 (6th Cir. 2008), we nevertheless stated that we would not reach the issue in that case because the argument was not properly before the Court. Id. That decision should not control the outcome in this case.
Furthermore, I believe that it is irrelevant that Sene’s persecution did not occur in Senegal, but in Mauritania. Because the *468 act of female genital mutilation, and more importantly, the resulting harm, is the same whether the mutilation was performed in Mauritania, Senegal, or any other practicing country, the presumption of a well-founded fear should control where the fear is of being deported to a country that still practices female genital mutilation. It is even further irrelevant that female genital mutilation has been ruled unlawful in Senegal, in the face of evidence that the practice still occurs within the country. According to the evidence presented to the Immigration Judge, despite the fact that female genital mutilation is a criminal offense in Senegal, it is still being practiced, and reports show that the procedure was imposed on approximately twenty-six percent of young girls in 2011.
Finally, even in the absence of an unre-butted fear of future persecution, Sene may still be entitled to asylum under the humanitarian exception. See Mukasey, 268 Fed.Appx. at 384 (Moore, J., dissenting). Under this exception, “[t]he decision-maker may grant asylum if: (1) the petitioner has shown ‘compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution; or’ (2) the petitioner has shown ‘that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country.’ ” Id. (quoting 8 C.F.R. § 208.13(b)(l)(iii)(A)-(B)). The record fully demonstrates that Sene’s persecution in the form of being forced to undergo female genital mutilation was severe; the record is equally clear that the effects of this persecution have been severe and lasting. I would hold that this well-documented severity entitles Sene to consideration for asylum under the humanitarian exception.
I believe that female genital mutilation is a permanent and continuing act of persecution that entitles a petitioner to a rebuttable presumption that there is an inherent well-founded fear of future prosecution, and that this presumption is not rebutted merely by the fact that the petitioner has essentially “aged out” of the harm. Because I think that the government in this case has not met its burden of rebutting this presumption, I would grant Sene’s petition for review.